**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CRAIG STAIRS, | ) | **ELECTRONICALLY FILED** |
|  | ) |  |
| *Plaintiff*, | ) | Case No. 2:23-CV-1753 |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| CBC LATROBE ACQUISITION, LLC, | ) |  |
|  | ) | **JURY TRIAL DEMANDED** |
| *Defendant*. | ) |  |
|  | ) |  |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Craig Stairs, by and through the undersigned counsel, now files the within Complaint in Civil Action against CBC Latrobe Acquisition, LLC, and avers as follows:

**PARTIES**

1.      Plaintiff, Craig Stairs (hereinafter, "Plaintiff"),  is an adult individual who resides at 117 Don Street, Derry, Pennsylvania 15627.  At all times relevant hereto, Plaintiff was biologically born a male and identifies as such.

2.      Defendant, CBC Latrobe Acquisition, LLC (hereinafter, "Defendant") is a Pennsylvania limited liability company with a commercial registered agent of Corporation Service Company in Dauphin County, Pennsylvania and business operations located at 100 33rd Street, Latrobe, Pennsylvania 15650 (hereinafter, "Facility").

**JURISDICTION AND VENUE**

3.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting that Defendant violated the Family and Medical Leave Act

of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter, "FMLA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII").

4.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (hereinafter, the "PHRA"), and asserts Pennsylvania state common law claims for defamation.  Ultimately, as explained more thoroughly below, the factual basis for such claims are so related to the Title VII and/or the FMLA claims that they form part of the same case or controversy under Article III of the United States Constitution.[1]

5.    Venue is also proper in this Court as Plaintiff is a resident and citizen of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in Latrobe, Westmoreland County, Pennsylvania, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6.    This Court has personal jurisdiction over Defendant because it routinely and regularly conducts business in the Commonwealth of Pennsylvania and routinely and regularly solicits business in Pennsylvania.  Further, as averred more fully below, Defendant violated numerous statutory provisions of federal and state law, and each and every one of the events giving rise to its unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania.

---

[1] Notably, Pennsylvania state courts interpret the applicable provisions of the PHRA in accord with their counterpart provisions in Title VII.  See *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 138 (E.D. Pa. 2020).

7.     As such, this Court, at bare minimum, may exercise personal jurisdiction over Defendant because Defendant has the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

8.     Further, this Court may properly maintain personal jurisdiction over Defendant in light of its extensive conduct within Pennsylvania and this judicial district in particular, and the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice.

9.     Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and/or 43 P.S. § 959 in that:

   a. On or July 22, 2022, Plaintiff dual filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter, the "EEOC") at case number 17F-2022-61128 (the "EEOC Charge") and the Pennsylvania Human Relations Commission (the "PHRC") at case number 202200046 (the "PHRC Charge").

   b. On July 17, 2023, the EEOC issued the Determination and Notice of Rights letter (the "Notice of Determination") wherein Plaintiff was afforded ninety (90) days within which to timely file an action in federal or state court.

   c. With the filing of the instant Complaint, Plaintiff has hereby satisfied that procedural requirement. A true and correct copy of the Notice of Determination is attached hereto, made a part hereof, and marked as **Exhibit A**.

### GENERAL ALLEGATIONS

1.     On or about June 18, 2010, Plaintiff initiated his employment with Defendant in the position of "Maintenance Worker" working in Defendant's maintenance department (hereinafter, the "Maintenance Department").

2.      Prior to Plaintiff's employment with Defendant, Plaintiff was diagnosed by his treating physician with (i) major depressive disorder; (ii) a generalized anxiety disorder; and (iii) bipolar disorder (hereinafter, the "Disabilities").

3.      As a result of the Disabilities, Plaintiff sought care and treatment, via both cognitive therapy sessions and prescribed medications, for same.

4.      In or around 2020, at the recommendation of Plaintiff's treating physician relative to his Disabilities, Plaintiff applied for and was approved by Defendant for medical leave under the FMLA (hereinafter, the "FMLA Leave").  Accordingly, Plaintiff would utilize the FMLA Leave on a sporadic, periodic basis wherein he would be afforded the opportunity to medically treat the Disabilities.

5.      Immediately following Plaintiff's use of FMLA Leave, Plaintiff's direct supervisor Tony Camarote (hereinafter, "Mr. Camarote") would make disparaging comments to Plaintiff related to Plaintiff's use of leave.  Specifically, Mr. Camarote's comments would discourage Plaintiff from using his leave and would falsely accuse Plaintiff of fabricating a legitimate medical need for the FMLA Leave.

6.      On numerous occasions following the FMLA Leave, Mr. Camarote threatened to have Plaintiff's employment terminated because of Plaintiff's use of the FMLA Leave.  Mr. Camarote made his retaliatory animus known to Plaintiff, in no uncertain terms, and routinely stated that Mr. Camarote was going to (or had recently) reported Plaintiff to Plaintiff's "plant manager".  Further, Mr. Camarote stated within these reports he (falsely) accused Plaintiff of intra-departmental problems in an effort to have Plaintiff terminated.

7.      In 2022, and following Plaintiff's use of FMLA Leave, Mr. Camarote informed Plaintiff that Defendant's management personnel were discussing the department's performance

4

with Mr. Camarote. Mr. Camarote, in the course of these discussions, informed Defendant's personnel, in a disparaging fashion, that Plaintiff's FMLA Leave was at "fault" because he "used FMLA time". Mr. Camarote's retaliatory animus is self-evident and Mr. Camarote's efforts to terminate Plaintiff's employment are clear.

8. However, Mr. Camarote was not the only individual that harbored a retaliatory animus retaliatory animus towards Plaintiff for the FMLA Leave. Plaintiff's supervisor Heidi Brovald (hereinafter, "Ms. Brovald") echoed Mr. Camarote's animus and endeavor to terminate Plaintiff's employment.

9. Following many instances of Plaintiff's use of FMLA Leave, Ms. Brovald routinely made disparaging remarks towards Plaintiff concerning the FMLA Leave. Specifically, Ms. Brovald would inform Plaintiff he "let his shift down because of taking FMLA time," that he "should be fired because he called off," that he was "useless because of taking FMLA. Ms. Brovald's retaliatory and unlawful animus violative of the FMLA is clear.

10. In or around January of 2022, Plaintiff discovered that the shift production supervisor named Ms. Brovald intended to terminate all the male employees within the maintenance department. Specifically, Plaintiff's supervisor Daniel Mattetolli (hereinafter, "Mr. Mattetolli") informed Plaintiff that, in no uncertain terms, Ms. Brovald confided in him of her intent to "get everyone in the maintenance department discharged."

11. At this time, Plaintiff protested, to Mr. Mattetolli, that Ms. Brovald's actions are discriminatory and unlawful. However, Mr. Mattetolli refused to act and refused to take any actions to remedy Ms. Brovald's flagrantly unlawful intention or desired discriminatory outcomes.

12. Given Ms. Brovald's already existing retaliatory animus directed towards Plaintiff because of the FMLA Leave, this heightened Plaintiff's fear of being unlawfully terminated.

5

13. In furtherance of Ms. Brovald's intention to unlawfully terminate Plaintiff, Plaintiff discovered that Ms. Brovald's coworker, subordinate, and close personal friend Marci Ann Hayes (hereinafter, "Ms. Hayes") intended to falsely accuse Plaintiff of physically touching her in the workplace. Further, Plaintiff discovered that Ms. Brovald and Ms. Hayes filed a report with Defendant's human resource department containing these false allegations in an effort that would naturally result in the termination of Plaintiff's employment and that would also defame him in doing so.

14. On or about February 6, 2022, after discovering the above, Plaintiff reported to his union, Beer Bottlers Local Union 144B (the "Union"), that Ms. Brovald was intentionally targeting the male employees working with the Maintenance Department to have them terminated because of their gender. Plaintiff met with union officials Mike Ray, Steve Tulenko, and Bob Charettie and specifically made known his concerns regarding Ms. Brovald and her discriminatory and retaliatory animus. At all times material hereto, Plaintiff's report to the Union constituted a legally operative "protected activity" under Title VII to which Plaintiff was shielded from any retaliatory efforts promulgated by the Defendant.

15. Upon information and belief, the Union informed the Defendant of Plaintiff's fear and concerns of Ms. Brovald's discriminatory efforts to terminate the male employees within the maintenance department.

16. On or about February 22, 2022, Defendant's supervisor, Nicole Howard ("Ms. Howard") and Defendant's temporary Plant Manager (name unknown) (hereinafter, the "Plant Manager") telephoned Plaintiff to inform him that he was being placed on an unpaid suspension pending the outcome of an investigation.

17.    On or about February 24, 2022, in a face-to-face meeting with Ms. Howard and the Plant Manager, Plaintiff vigorously asserted the falsity of Ms. Brovald's and Ms. Hayes's accusations.  Further, Plaintiff raised his concerns that he was being terminated in connection with his routine use of the FMLA Leave.

18.    In reckless disregard of the falsity of Ms. Brovald's and Ms. Hayes's actions, on or about March 10, 2022, Defendant terminated Plaintiff from employment.

19.    Upon information and belief, subsequent to Plaintiff's termination, Ms. Brovald and Ms. Hayes directly disseminated information to Plaintiff's former coworkers stating that the allegations levelled against Plaintiff were indeed false, however, that the allegations were proffered in an effort to terminate Plaintiff's employment.

20.    Moreover, upon information and belief, subsequent to Plaintiff's termination, Defendant advised its employees that anyone providing testimony on Plaintiff's behalf relative to the instant action would be terminated immediately.

## COUNT I
## RETALIATORY TERMINATION IN VIOLATION OF THE FMLA
### 29  U.S.C. § 2601 *et seq.*

21.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

22.    Section 105 of the FMLA and Section 825.220 of the FMLA Regulations, 29 C.F.R. Part 825, set forth certain protection to employees who exercise their rights under this law.  The FMLA prohibits employers from interfering with, restraining, or denying an employee's rights under this law.  Further, it is unlawful for any employer to discharge or in any other manner discriminate against any employee opposing any practice made unlawful by this law.

23.     To succeed on an FMLA retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights.  *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

24.     At all times relevant hereto, Plaintiff was entitled to leave pursuant to the FMLA given his extensive employment history with Defendant, the size of the Defendant, and due to the number of hours Plaintiff correspondingly worked within a twelve (12) month basis.

25.     As delineated above, Plaintiff routinely exercised his statutory right to leave pursuant to the FMLA throughout the course of his employment with Defendant.  Further, Plaintiff utilized his statutory leave up until his separation in 2022.

26.     Following Plaintiff's continued use of leave pursuant to the FMLA, Plaintiff suffered the ultimate adverse employment action in March of 2022 in that his employment was terminated.

27.     Plaintiff's termination was casually related to the invocation of Plaintiff's rights in that Defendant's decision to terminate Plaintiff operated as the motivating factor to terminate Plaintiff's employment.  Put differently, had Plaintiff not utilized FMLA Leave, Plaintiff's employment would have bene preserved and Plaintiff would not have been terminated.

28.     Defendant's retaliatory animus in terminating Plaintiff is evident throughout its continued disparaging comments made towards Plaintiff concerning his FMLA Leave. Specifically, Defendant's pattern and practice of harassing Plaintiff, perpetuated by decision-makers Mr. Camarote and Ms. Brovald, demonstrate Defendant's unlawful intention to terminate Plaintiff in violation of the FMLA.

29.     Further, given the ongoing nature of Plaintiff's FMLA Leave as delineated above, the close temporal proximity that exists from the time Plaintiff exercised his rights to the FMLA Leave to the time that Defendant discharged Plaintiff from employment, a compelled inference emerges that Defendant retaliatorily terminated Plaintiff because he sought to exercise his statutory rights pursuant to the FMLA.

30.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## INTERFERENCE WITH RIGHTS IN VIOLATION OF THE FMLA
### 29 .S.C. § 2601 *et seq.*

31.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

32.     Section 105 of the FMLA and Section 825.220 of the FMLA Regulations, 29 C.F.R. Part 825, set forth certain protection to employees who exercise their rights under this law. Specifically, the FMLA prohibits employers from interfering with, restraining, or denying an employee's rights under this law.

33.     Further, it is unlawful for any employer to discharge or in any other manner discriminate against any employee opposing any practice made unlawful by this law.  "Interfering

with" the exercise of an employee's rights would include refusal to grant FMLA leave or discouraging an employee from taking FMLA leave.

34.     To make a claim of interference under the FMLA, a plaintiff must establish that: (1) the plaintiff was entitled to FMLA leave; (2) the plaintiff gave notice to the defendant of his intention to take FMLA leave; and (3) the plaintiff was denied benefits to which he was entitled under the FMLA.  See *Ross*, 755 F.3d at 191-92.

35.     As delineated above, Plaintiff was entitled to statutorily protected leave pursuant to the FMLA.

36.     At all times relevant hereto, from 2020 to Plaintiff's separation in 2022, Plaintiff notified Defendant of his intention to utilize leave arising under the FMLA because of the ongoing nature of the Disabilities.  Correspondingly, Defendant approved Plaintiff to utilize the leave provisions of the FMLA in a routine and sporadic manner as dictated by Plaintiff's medical needs.

37.     Throughout 2022, Plaintiff routinely utilized the leave provisions of the FMLA to treat his Disabilities.  In March of 2022, Defendant terminated Plaintiff's employment and correspondingly denied Plaintiff any further opportunity to utilize his statutorily entitled rights pursuant to the FMLA.

38.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**COUNT III**</u>
**DEFAMATION OF CHARACTER**
**IN VIOLATION OF 42 Pa.C.S. § 8343**

39.      Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

40.      In relevant part, 42 Pa.C.S. § 8343 provides as follows:

(a)  Burden of plaintiff.--In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1)  The defamatory character of the communication.
(2)  Its publication by the defendant.
(3)  Its application to the plaintiff.
(4)  The understanding by the recipient of its defamatory meaning.
(5)  The understanding by the recipient of it as intended to be applied to the plaintiff.
(6)  Special harm resulting to the plaintiff from its publication.
(7)  Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a).

41.      In distilling these statutory elements, the Superior Court of Pennsylvania has held that, "[g]enerally, a defamatory action must allege: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the complainant; (4) the third party's understanding of the communication's defamatory character; and (5) injury." *Pelagatti v. Cohen*, 536 A.2d 1337, 1345 (Pa. Super. Ct. 1986).

42.      Further, with respect to the defamatory character of a statement, "[u]nder the Restatement (Second) of Torts, defamation *per se* occurs when the statement ascribes to the plaintiff any of the following: commission of a criminal offense, a loathsome disease, serious sexual misconduct, or conduct or characteristics that adversely affect the plaintiff's fitness to properly conduct his profession, trade or business." *Krolczyk v. Goddard Systems, Inc.*, 164 A.3d 521, 531 (Pa. Super. Ct. 2017).

11

43. As delineated above, Defendant's agents, by and through Ms. Bravoldi and Ms. Hayes made numerous false verbal comments, remarks, and representations to Plaintiff's coworkers regarding Plaintiff. As such, Defendant "published" said statements for purposes of slander law. Moreover, Defendant ratified Ms. Bravoldi's and Ms. Hayes's false statements by terminating Plaintiff and utilizing the (false) statements as grounds to justify Plaintiff's termination.

44. Further, the substantive content of Defendant's statements, to wit, constitutes slander *per se* because it asserts that Plaintiff committed activity that is potentially punishable by imprisonment.

45. In the alternative, the above-mentioned statements are defamatory in character and meaning because they strongly suggest, if not outright contend, that Plaintiff disobeys the law at work, and therefore, possesses a stained reputation in the community, particularly one that would deter third persons from associating or dealing with him in connection with his employment.

46. Indeed, Defendant's defamatory statements were untrue and inaccurate depictions of Plaintiff's character and reputation.

47. Plaintiff is a private character, for purposes of defamation law, and the defamatory statement mentioned above is patently false as a matter of fact.

48. On its face, the defamatory statement, as contrived, portrayed, reiterated, and conveyed by Defendant, explicitly referred to Plaintiff by name and, given the context and setting in which they were used, Defendant was obviously aware that the statement was a direct assault on Plaintiff's character and reputation.

49. Moreover, in solely devising the content of the defamatory statement and then reproducing and reiterating them to Plaintiff's coworkers, Defendant acted in a grossly negligent

manner, knowing (or at the very least, having reason to know) that the statement was factually false.

50.     Alternatively, in engaging in the above-mentioned course of conduct, Defendant acted with actual malice, knowing that the statement was false as a matter of fact and then conveying and reproducing those falsehoods with the intent and sole purpose of tarnishing Plaintiff's reputation and character.

51.     When Defendant created and conveyed the defamatory statements to Plaintiff's coworkers, Defendant was not acting in a privileged setting or capacity.

52.     Nonetheless, at all times relevant hereto, the agents and/or employees who devised and/or conveyed the above-mentioned statement were acting within the scope of their employment with Defendant, commenting on Plaintiff in conjunction with his behavior when he performed job duties on behalf of Defendant.

53.     As such, pursuant to a theory of vicarious liability, Defendant is legally responsible for the conduct of its agents and/or employees in creating and reproducing the defamatory statements. See *Estate of Denmark v. Williams*, 117 A.3d 300, 306 (Pa. Super. 2015).

54.     As a direct and proximate result of these defamatory statements, Plaintiff suffered harm to his reputation within Defendant's workplace culture as well as the community writ large.

55.     Ultimately, the actions and conduct of Defendant's agents and/or employees, as imputed to Defendant, are so outrageous and comprised of evil motive, ill will, and an intentional desire to harm the reputation and character of Plaintiff, while depriving him of prospective gainful employment, that an award of punitive damages is warranted.

56.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and

13

lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IV**
**HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER**
**IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

57.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

58.     In order to state a claim under Title VII for discrimination resulting from a hostile work environment, an employee must show that (1) the employee suffered intentional discrimination because of his sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the employee, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability. *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).

59.     As alleged hereinabove, in or around January of 2022, Plaintiff learned Ms. Brovald targeted many of Defendant's male employees, which included Plaintiff, to be terminated because of their gender. In line with this discriminatory animus, Ms. Brovald took numerous actions, which culminated in a legally operative hostile work environment, in efforts to ensure the male employees, Plaintiff included, to be terminated.

60.     Moreover, the hostile work environment that Defendant inflicted upon Plaintiff was severe and pervasive in that it lasted for approximately two months, which negatively affected

14

Plaintiff's psychological wellbeing. Further, the hostile work environment that Plaintiff endured had a detrimental impact on Plaintiff and the terms and conditions of his employment.

61.    Any prudent person standing in the shoes of Plaintiff would have similarly experienced the said detrimental impact.

62.    Although Plaintiff specifically informed his union representative sof the existence of a hostile work environment, Defendant failed to take prompt corrective action and abate the hostile work environment.

63.    Therefore, Defendant violated Title VII and/or the PHRA in failing to effectively remediate a hostile work environment.

64.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT V
### RETALIATORY TERMINATION
### IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.*

65.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

66.    "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's

15

action." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007).

67.    On or about February 6, 2022, Plaintiff engaged in a protected activity in that he reported, in no uncertain words, the discriminatory and hostile environment fostered by Ms. Brovald.

68.    On February 22, 2022, approximately sixteen (16) days later, Defendant placed Plaintiff on suspension without pay.  Further, less than thirty (30) days following Plaintiff's protected activity, Defendant terminated Plaintiff.

69.    Given the close temporal proximity that exists from the time Plaintiff reported Defendant's discriminatory conduct to the time Defendant instituted the abovementioned adverse employment actions, it is necessarily inferable that Defendant retaliated against Plaintiff for protesting the harassment.

70.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### REQUEST FOR RELIEF

Plaintiff, Craig Stairs, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, CBC Latrobe Acquisition, LLC, and prays for relief as follows:

1.    Declare and find that Defendant committed any one or more of the following acts:

16

     i.     Violated the FMLA in retaliatorily terminating Plaintiff;

    ii.     Violated the FMLA in interfering with Plaintiff's Rights;

   iii.     Committed the tort of defamation in contriving and conveying defamatory statements about Plaintiff;

   iv.     Violated Title VII and/or the PHRA in creating and sustaining a hostile work environment on the basis of Plaintiff's gender; and

    v.     Violated Title VII and/or the PHRA in retaliatorily terminating Plaintiff on the basis of Plaintiff's gender.

2.     Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses and suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3.     Award equitable relief in form of back pay and front pay;

4.     Award liquidated damages sufficient to deter Defendant from engaging in future conduct of a similar nature;

5.     Award attorney's fees; and/or

6.     Award pre-judgment and continuing interest as calculated by the Court.

**TRIAL BY JURY IS DEMANDED.**

17

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: October 10, 2023

By: */s/ Kyle H. Steenland*
Kyle H. Steenland (Pa. I.D. No. 327786)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Fax: 412.910.7510
kyle@workersrightslawgroup.com

*Counsel for Plaintiff, Craig Stairs*

**VERIFICATION**

I, Craig Stairs, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.


Dated: 10 / 10 / 2023

_Craig Stairs jr_
Craig Stairs